# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** E-13-23

| | | |
|---|---|---|
| DANIEL WILLIAMS | APPELLANT | **Opinion Delivered** SEPTEMBER 25, 2013 |
| | | APPEAL FROM THE ARKANSAS BOARD OF REVIEW |
| V. | | [NO. 2012-BR-03606] |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, and WALMART | | |
| | APPELLEES | AFFIRMED |

## DAVID M. GLOVER, Judge

Pursuant to a progressive-discipline policy, Daniel Williams was discharged from his job as assistant manager of a Walmart store on October 4, 2012. He had been employed by Walmart since November 1989. The Appeal Tribunal determined that Walmart had followed its progressive-discipline policy in discharging Williams. The Appeal Tribunal further found that because his "discharge was the result of repeated acts of poor performance despite progressive warnings, the claimant's poor performance must be viewed as intentional under Ark. Code Ann. § 11-10-514," and he was therefore "discharged from last work for misconduct in connection with the work." The Board of Review denied Williams's application for appeal, rendering the Appeal Tribunal's decision the Board's decision for purposes of our judicial review. In this appeal, Williams contends that there was no substantial evidence to support the finding that he was discharged for misconduct. We affirm.

*Background*

At the hearing before the Appeal Tribunal, John Garrard, the store manager, testified that he and Brent Raines, the market manager, were the individuals who discharged Williams. Garrard explained that the reason for the discharge was that Williams "failed to comply with the Personal Improvement Plan that we had put forth a little more than ninety days before the date of his termination." He further testified that Williams had been placed on an improvement plan because it was believed he was using poor judgment when making decisions, that he did not take initiative to complete tasks, and that he was unorganized and unprepared; that he wanted Williams to set expectations with his department managers, to take initiative in addressing those standards, to take time to plan, and not to ask for permission to execute initiatives in his areas; and that he believed Williams's zone-merchandise supervisors and department managers knew more about what was gong on in his area than he did. He stated that Williams had received previous warnings in 2007, 2010, and 2012 that were related to poor judgment or poor performance, and that under Walmart's progressive-discipline policy, Williams had reached his last coaching step on May 14, 2012. Garrard explained that the May 14 step was taken because Williams had exhibited poor judgment in making a particular business decision.

Williams also testified before the Appeal Tribunal. He stated that he had been an assistant manager at Walmart and that John Garrard notified him of his termination on October 4, 2012. He acknowledged that Walmart had followed its progressive-discipline policy with regard to his discharge and that he had received prior warnings related to performance issues. Williams said that the final warning he received was related to

2

reimbursement to a customer for damage that her automobile sustained in Walmart's automotive department while Williams was off work. According to Williams, she had gotten the damage repaired elsewhere and presented Walmart with the bill for the repairs. Williams testified that he reimbursed her for the amount of the bill; that he had no reason to think that the bill was not accurate but later learned that it was not. He acknowledged that he failed to follow company policy and procedures for processing the claim, but stated that his supervisor did not inform him of that fact until a couple of weeks after he had already written out the money order.

Garrard further stated that the last coaching Williams received was on May 14, but that there were several subsequent discussions with him about his performance and his improvement plan on June 14, July 13, and July 23. He said that the July 23 meeting was to let Williams know that at that point, he had failed to make the necessary changes under his improvement plan and that he had thirty days to make those changes. Garrard said that during that thirty-day period, Williams took a vacation and never came to Garrard or Brent Raines to discuss whether that vacation would interfere with his ability to comply with the improvement plan.

Williams replied that he did send an e-mail to Raines to let him know about the vacation plans. He stated he had a copy of the e-mail and that Raines should have a copy also. Williams said that he sent the e-mail about a month before he went on vacation; that he did not include Garrard on the e-mail because he did not know that he was supposed to do so; and that he provided the e-mails to Garrard once he requested them.

*Standard of Review*

In our review of unemployment cases, findings of fact by the Board of Review are conclusive if they are supported by substantial evidence. *Board of Trustees v. Williams*, 91 Ark. App. 38, 207 S.W.3d 569 (2005). Our review is limited to determining whether the Board could reasonably reach its decision upon the evidence before it. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We do not conduct a de novo review of the evidence; the evidence and all reasonable inferences deducible therefrom are reviewed in the light most favorable to the Board's findings. *Id.* Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.* Like a jury, an administrative agency is free to believe or disbelieve any witness, and we give the evidence its strongest probative force to support the administrative decision. *Id.*

*Discussion*

If so found by the Director of the Department of Workforce Services, an individual shall be disqualified for benefits if he or she is discharged from his or her last work for misconduct in connection with the work. Ark. Code Ann. § 11-10-514(a)(1) (2012). An individual shall not be deemed guilty of misconduct for poor performance in his or her job duties unless the employer can prove that the poor performance was intentional. Ark. Code Ann. § 11-10-514(d)(1). An individual's repeated act of commission or omission or negligence despite progressive discipline shall constitute sufficient proof of intentional poor performance. Ark. Code Ann. § 11-10-514(d)(2).

4

Williams's basic contention in this appeal is that section 11–10–514(d)(2) "does not contemplate that multiple acts of *differing types* of poor performance should constitute sufficient proof of the requisite intent for misconduct." That is, he argues that the clear language of the statute requires repeated acts of the same type of poor performance in order to establish the necessary intent for a finding of misconduct, and that because the poor performance for which he was discharged represented differing types, it does not constitute sufficient proof of the necessary intent. We disagree.

It is clear from our case law that misconduct involves disregard of the employer's interest, violation of the employer's rules, disregard of the standards of behavior the employer has a right to expect of its employees, and disregard of the employee's duties and obligations to the employer, *Rodriguez v. Director*, 2013 Ark. App. 361; that it requires more than mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies, ordinary negligence in *isolated* instances, or good-faith errors in judgment or discretion. *Id*. We have also made clear that conduct

> that may well provide a sufficient basis for the discharge of an employee may not be sufficient to deny that employee unemployment benefits. The two inquiries are entirely different. To conclude that there has been misconduct for unemployment-insurance purposes, we have long required an element of intent: mere good-faith errors in judgment or discretion and unsatisfactory conduct are not misconduct *unless they are of such a degree or recurrence as to manifest culpability, wrongful intent, evil design, or intentional disregard of an employer's interest*.

*Id*. at 4. (Emphasis added.)

Here, under both our statutes and case law, the recurrence of unsatisfactory conduct can reach such a degree as to manifest the necessary intent to establish misconduct for unemployment-insurance purposes. We are not convinced that either our case law or our

statutes require that the unsatisfactory conduct be of the same type. We conclude that reasonable minds could have reached the same decision as that of the Board of Review and that the Board's decision is therefore supported by substantial evidence.

Affirmed.

GLADWIN, C.J., and WHITEAKER, J., agree.

*The Kester Law Firm*, by: *Joseph Hall*, for appellant.

*Phyllis A. Edwards*, for appellee.